26CA0034 Peo in Interest of CV 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0034
Pueblo County District Court No. 24JV30342
Honorable Willaim Alexander, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of C.V., a Child,

and Concerning T.V.,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

Cynthia Mitchell, County Attorney, David A. Roth, Special Assistant City Attorney, Pueblo, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Fort Collins, Colorado, for Appellant

¶ 1     In this dependency or neglect proceeding, T.V. (father) appeals the judgment allocating parental responsibilities (APR) for C.V. (the child) to J.V. (mother) and maternal grandmother.  We affirm in part, reverse in part, and remand the case to the juvenile court with instructions.

## I.     Background

¶ 2     After the child's birth, the Pueblo County Department of Human Services (the Department) filed a petition in dependency or neglect, alleging concerns about the parents' abilities to care for the child because when the parents' other child died one year prior, he had exhibited signs of physical abuse and medical neglect.  The Department further noted that father was incarcerated on related pending charges.

¶ 3     The juvenile court granted temporary custody to maternal grandmother, under the Department's protective supervision, and allowed mother to reside in maternal grandmother's home so long as all her contact with the child was supervised.

¶ 4     Five months later (but before any adjudication had taken place), the Department moved the juvenile court to approve its

proposed treatment plan for father. That same day, the juvenile court granted the Department's motion and adopted the plan.

¶ 5        Two weeks later, the juvenile court held a review hearing. Father's counsel appeared, but father did not because the jail didn't honor the writ. At the review hearing, the Department verbally moved for an APR between mother and maternal grandmother. Mother entered a no-fault admission and agreed to the proposed APR. Father's counsel requested that the court proceed "without an adjudication to [father]" and grant father fourteen days to object to the proposed APR because counsel hadn't been able to discuss the terms with father. However, based on counsel's prior conversations with father, she "believe[d] that he [was] in agreement with [the] plan." *See* § 19-1-104(6)(a)(II), C.R.S. 2025 (allowing the juvenile court to allocate parental responsibilities when "[a]t least one parent . . . has an adjudication" and the parent "who do[es] not have an adjudication . . . consent[s] to jurisdiction"). The court agreed to allocate parental responsibilities between mother and maternal grandmother, indicated that it was not ordering parenting time for father, and ordered father's counsel to file any objections within fourteen days.

¶ 6     Five weeks later, the Department filed a proposed order which included findings that (1) the child was dependent and neglected "as it relates to [mother]"; (2) father had not complied with the "treatment plan ordered by the [c]ourt following adjudication"; and (3) father was "unfit as that term is defined by the Colorado Children's Code." Four days later, without any further hearing or affording father the previously ordered objection period, the juvenile court approved and adopted the proposed order without amendment.

## II.     Due Process

¶ 7     Father contends that the juvenile court deprived him of due process by making the above listed findings without affording him the opportunity to challenge the allegations at a trial or present evidence in his favor. As to the juvenile court's findings regarding father's fitness, adjudicatory status, and noncompliance with any treatment plan, we agree.

### A.     Preservation

¶ 8     The child's guardian ad litem (GAL) urges us not to address this claim because father did not object to the court's findings or request a hearing. But father correctly asserts that he had no

opportunity to preserve his contention because his treatment plan compliance and fitness were not discussed during the review hearing. It was not until the Department filed its proposed order that father had notice of the proposed findings. And the court issued its order four days later instead of giving father fourteen days to object.[1] Thus, the only way for father to object to the court's findings would have been to file a post-trial motion. But an appellant isn't required to file a post-trial motion with the juvenile court, and failing to do so does not preclude the appellant from raising an issue on appeal. *See* C.R.C.P. 59(b). Accordingly, we will review father's assertion of error regarding the juvenile court's findings and conclusions, and we will consider it.

---

[1] The record is ambiguous as to whether father's fourteen-day objection period started from the hearing or from the date the Department filed the proposed order, but we will review father's contention either way. Father couldn't have objected to these findings within fourteen days of the hearing because he had no notice that the Department or the court planned to include the findings in the order. And four days wasn't a sufficient length of time for father to object to the proposed order. *See* C.R.C.P. 121 § 1-16(1) (giving a party seven days to object to the form of a proposed order); *People in Interest of K.J.B.*, 2014 COA 168, ¶ 9 ("Generally, the Colorado Rules of Civil Procedure apply to those juvenile matters that are not governed by the Colorado Rules of Juvenile Procedure or the Children's Code."); C.R.J.P. 1.

## B.     Applicable Law

¶ 9     When a court decision essentially eliminates or weakens familial bonds by terminating parental rights or denying custody, parents must first receive fundamentally fair procedures. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *People in Interest of D.I.S.*, 249 P.3d 775, 781-82 (Colo. 2011). Thus, in termination proceedings, due process requires that a parent be given "notice of the allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination." *People in Interest of E.B.*, 2022 CO 55, ¶ 16 (quoting *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 18). Arguably, not all of these protections apply in an APR proceeding because a parent retains other rights, including the right to petition to regain custody or to increase parenting time. *See, e.g.*, *People in Interest of L.B.*, 254 P.3d 1203, 1206 (Colo. App. 2011).

¶ 10     Here, however, we do not need to decide the full extent of what due process protections apply at an APR proceeding because it is well-settled that, at a minimum, due process requires that a party be provided with notice and a meaningful opportunity to be heard.

*See In re Marriage of Hatton*, 160 P.3d 326, 329 (Colo. App. 2007);

*In re Marriage of Smith*, 7 P.3d 1012, 1017 (Colo. App. 1999).

¶ 11    We review procedural due process claims de novo. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 26. But a parent may not obtain relief on a due process claim absent a showing of harm or prejudice. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007).

### C.    Analysis

¶ 12    In its written order, the juvenile court found that (1) father had not complied with the treatment and monitoring required by his treatment plan adopted "following adjudication"; (2) the Department's reasonable efforts "ha[d] been unable to rehabilitate [father] such that he would be capable of providing adequate parenting to the child within a reasonable time"; and (3) father was unfit. For the following reasons we conclude that the court erred in making these findings.

¶ 13    First, we are not aware of any legal authority that would allow the juvenile court to adopt a treatment plan for a parent before adjudicating the child dependent or neglected under the circumstances of this case. *See* § 19-3-508(1)(e)(I), C.R.S. 2025 (requiring the juvenile court, except in certain cases not applicable

here, to approve an appropriate treatment plan *after* adjudication). Hence, because the juvenile court didn't find the child to be dependent or neglected as to father, any order adopting or requiring father to comply with a treatment plan was improper. *See People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009) ("Because section 19-3-508(1)(e)(I) presupposes an adjudication of the child relative to each parent . . . the court does not have the power to impose a treatment plan on a parent when the child has not been found to be dependent and neglected by that parent." (citation omitted)). And, consequently, the juvenile court erred by finding that father failed to comply with his improperly ordered treatment plan.

¶ 14 Second, the juvenile court erred by determining that father was unfit and that the Department's "reasonable efforts" had been unable to "rehabilitate" him without affording him any opportunity to be heard on that issue. *See E.B.*, ¶ 16; *Hatton*, 160 P.3d at 329. The Department and GAL urge us to deny father's request for relief because of a lack of prejudice. *See J.A.S.*, 160 P.3d at 262. In support, they essentially assert that, because of father's incarceration, "he could not provide care for the child," and he had

7

no evidence to provide "that would have contradicted the [juvenile] court's finding regarding fitness." Therefore, they urge, he "fail[ed] to show how the . . . proceedings would have resulted in a different outcome had there been an evidentiary hearing." But a court cannot base a finding of unfitness solely on a parent's incarceration. *See K.D. v. People*, 139 P.3d 695, 700-01 (Colo. 2006). Moreover, the argument presented by the Department and GAL would require us to speculate as to what the juvenile court would have found following an evidentiary hearing — at which the Department would have had the burden to prove father's unfitness — which we decline to do.[2]

¶ 15    We similarly reject the Department's and the GAL's arguments that father isn't prejudiced by the court's errors because the court ordered an APR instead of terminating father's rights. While father may be able to seek a modification of the APR in the future, the court's erroneous unfitness finding means that he would not be

---

[2] We recognize that father has been charged with child abuse resulting in the death of another child, and we understand why the Department and the juvenile court would be concerned about those charges. But a criminal charge, in and of itself, isn't evidence on which the juvenile court can rely to base an unfitness finding. *See Jordan v. People*, 419 P.2d 656, 662 (Colo. 1966).

entitled to his constitutional presumption that his actions are in the child's best interests or to have his requests accorded special weight against those of maternal grandmother. *See Troxel v. Granville*, 530 U.S. 57, 68-70 (2000) (recognizing that a parent who is adequately caring for his or her child — a fit parent — is presumed to act in the child's best interests and requiring the trial court to accord "special weight to the [fit] parent's own determination" regarding the child's best interests before granting an APR to a nonparent).

¶ 16 We must therefore reverse the portions of the judgment containing the erroneous findings and remand to the juvenile court to remove them. Specifically, the juvenile court must remove paragraph nine of the findings and orders:

> Reasonable efforts by child caring agencies have been unable to rehabilitate the Respondent, [father], such that he would be capable of providing adequate parenting to the child within a reasonable time relative to the child's needs. The Court finds [father] to be unfit as that term is defined by the Colorado Children's Code.

¶ 17 The court must also remove the first sentence of paragraph ten of the findings and orders: "This Court found the Respondent Father unfit and noted their non-compliance with Court Ordered

9

treatment and monitoring (see attached treatment plan ordered by the Court following adjudication)."

¶ 18    Except for the findings described above, the APR order shall remain in full force and effect.

### III.    Ineffective Assistance of Counsel

¶ 19    Father next contends that he received ineffective assistance of counsel.  We discern no basis for a remand.

### A.    Applicable Law

¶ 20    A parent has a statutory right to counsel in a dependency or neglect proceeding.  § 19-3-202(1), C.R.S. 2025.  A parent's statutory right to counsel includes the right to effective assistance of counsel.  *See A.R. v. D.R.*, 2020 CO 10, ¶ 47.

¶ 21    To successfully assert a claim for ineffective assistance of counsel, a parent must show that (1) counsel's performance was outside the wide range of professionally competent assistance, and (2) the parent was prejudiced by counsel's errors.  *Id.* at ¶ 48.  For the performance prong, a parent must prove that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688 (1984); *see A.R.,* ¶¶ 48, 60 (the *Strickland* standard applies to claims of ineffective

assistance of counsel in dependency or neglect proceedings). To show prejudice, the parent must show a reasonable probability that, but for counsel's deficient performance or unprofessional errors, the outcome of the proceeding would have been different. *A.R.*, ¶ 60. "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 22 Because claims of ineffective assistance of counsel in dependency or neglect cases can be raised for the first time on appeal, the record may be insufficiently developed to allow us to resolve the parent's contentions without a remand to the district court for further proceedings. *A.R.*, ¶ 63. To justify such a remand, however, the parent must allege facts with sufficient specificity to constitute a prima facie showing of ineffective assistance of counsel. *Id.* If the parent's allegations lack sufficient specificity, we may summarily deny the ineffective assistance claim. *See People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

### B. Analysis

¶ 23 Father first argues that his counsel performed deficiently by failing to (1) advise him of the APR in order to ascertain his position; (2) advocate for him during the review hearing; and (3) provide him

with a copy of the APR order after its entry and advise him of his rights.

¶ 24    We will assume, without deciding, that counsel's performance in this regard fell below the range of professionally competent assistance. However, to the extent father asserts that the court's findings resulted in the erroneous entry of an APR or his inability to object to its substantive terms, he hasn't shown that the result of the proceeding would have been different in the absence of counsel's failures. *See A.R.*, ¶ 60. Father doesn't explain what his position on the APR would have been or how it differed from the APR order entered by the court (other than including the findings discussed in Part II above). *See C.H.*, 166 P.3d at 291. Moreover, father was able to file this appeal to lodge his objections to the findings described above. These ineffective assistance of counsel claims must therefore fail. *See C.B.*, ¶ 26.

¶ 25    Father also asserts that his counsel failed to (1) request an appropriate treatment plan for him based on his incarceration and (2) ensure that the Department made reasonable efforts. Given that we have reversed and remanded for the court to strike the findings

regarding the treatment plan and reasonable efforts, any prejudice has been cured, and we need not address these arguments.

## IV. Disposition

¶ 26 The judgment is affirmed in part and reversed in part, and the case is remanded to the juvenile court for further proceedings consistent with this opinion. All portions of the APR order not affected by this opinion remain in full force and effect.

JUDGE WELLING and JUDGE SCHOCK concur.